UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRIMERICA LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-20-366-G ) |
| SAFIYATOU BADOLO ISAMOTU BULLOCK, individually, as the Personal Representative of the Estate of Troy D. Bullock, and as the mother and next friend of CHILD A and CHILD B, et al., | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Before the Court are the Cross-Motions for Summary Judgment of Defendant Safiyatou Bullock, individually and as the personal representative of the estate of Troy D. Bullock and as the mother and next friend of Child A and Child B ("S.B. Mot."), and of Defendants Cynthia Bullock, Caleb Bullock, Levi Bullock, and Samuel Bullock ("C.B. Mot."). The Motions are fully briefed and at issue. *See* Doc. Nos. 18, 25, 33.

I. MATERIAL FACTS

On May 26, 1999, Troy Bullock submitted an Application for Life Insurance (the "Application") with Primerica Life Insurance Company ("Primerica").[1] *See* S.B. Mot. Ex. 2 (Doc. No. 18-2) at 1-3. At the time, Troy Bullock was married to Cynthia Bullock, with

---

[1] Primerica initiated this interpleader action on April 21, 2020, pursuant to Rule 22 of the Federal Rules of Civil Procedure. Primerica subsequently interpled the life insurance benefits due under the Policy upon the death of Troy Bullock and has been dismissed from this action. *See* Doc. Nos. 26, 30.

whom he had three children, Defendants Caleb Bullock, Levi Bullock, and Samuel Bullock. Troy Bullock requested benefits in the amount of $200,000 and a spousal rider in the amount of $240,000. *See id.* at 1. Both Troy Bullock and Cynthia Bullock signed the Application. *See id.* at 3.

With respect to the designation of beneficiaries, the Application reflects the following:

| 6. BENEFICIARIES – THE BENEFICIARY FOR ANY SPOUSE OR CHILD RIDERS WILL BE THE PRIMARY INSURED, UNLESS OTHERWISE LISTED UNDER "SPECIAL REQUESTS" ON PAGE 4. BENEFICIARIES TO SHARE EQUALLY, UNLESS OTHERWISE SPECIFIED.   IF THIS IS AN IRREVOCABLE BENEFICIARY, CHECK HERE ☐ |||
|---|---|---|
| List Primary Beneficiaries | Relationship to Insured | Social Security No. |
| Cynthia Bullock, if living | Wife | |
| List Contingent Beneficiaries | Relationship to Insured | Social Security No. |
| otherwise any children born to marriage of the insured and said wife, or surviving equally | children | |

*Id.* at 2. That is, for the primary beneficiary the Application names "Cynthia Bullock, if living" and identifies the relationship to the insured as "wife." For the contingent beneficiaries the Application states, "otherwise any children born to marriage of the insured and said wife, or surviving equally,"[2] identifies the relationship to the insured as "children," and does not provide any social security number.

Primerica issued the requested life insurance policy on June 25, 1999. Troy Bullock and Cynthia Bullock divorced in August 2011. *See* S.B. Mot. Ex. 3 (Doc. No. 18-3) at 1. Troy Bullock subsequently married Safiyatou ("Safi") Bullock in September 2012. *See* S.B. Mot. Ex. 4 (Doc. No. 18-4) at 1. Troy and Safi Bullock had two children, identified

---

[2] The Court uses the words "or surviving equally" because the parties agree that is what is stated. The writing is not clear, though, and it is possible that what is actually written is "or survivors, equally."

in this action as Child A and Child B.

On March 13, 2017, Troy Bullock requested through a signed, handwritten document that Cynthia Bullock be removed from his policy after a spousal conversion (i.e., conversion of the spousal rider for the policy to a separate policy on the life of Cynthia Bullock) was effected. *See* S.B. Mot. Ex. 12 (Doc. No. 18-12) at 1 (stating "Please remove Cynthia Bullock from my policy once her spousal conversion has been processed."). Primerica reissued Troy Bullock's policy on March 22, 2017. *See* S.B. Mot. Ex. 1 (Doc. No. 18-1) at 3.

The policy defines "Beneficiary" as: "The person(s) to whom the Policy proceeds are payable at the death of the Insured. This is the person(s) named in the application as the Beneficiary, unless later changed (see Part 3)." *Id.* at 7. The policy further provides, at Part 3, as follows:

> BENEFICIARY - The Beneficiary's interest will end if the Beneficiary dies before the Insured. If no primary Beneficiary is living at the Insured's death, the death proceeds will be paid to any contingent Beneficiary. The proceeds will be paid to the Owner if the Insured dies and there is no primary or contingent Beneficiary. Proceeds will be paid to the Insured's estate if there is no living Beneficiary or Owner.
>
> We may rely on a sworn statement by any responsible person to discover the identity or nonexistence of any Beneficiary not identified by name. . . . .
>
> CHANGE OF BENEFICIARY – You can change a Beneficiary by Notice to Us. You can only change a Beneficiary while the Insured is alive. . . . . A Beneficiary change will take effect on the date You signed the Notice to Us. If the Insured died before We receive this Notice, the change is effective,

subject to any prior payment of proceeds.

S.B. Mot. Ex. 1, at 8.[3]

Troy Bullock died on July 11, 2019.  S.B. Mot. Ex. 5 (Doc. No. 18-5) at 1.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

---

[3] As evidence of the policy, both sides present the policy agreement as it existed when reissued in 2017.  *See* Exhibit 1 to Safi Bullock's Motion (Doc. No. 18-1) and Exhibit 1 to Cynthia Bullock's Response and Cross-Motion (Doc. No. 25-1).  The parties have not presented the Court with a separate document showing the policy agreement as it existed when issued in 1999.  To the extent there is any difference between the terms of the original 1999 agreement and the terms in the reissued 2017 agreement, no party contends that any such difference is material to the claims before the Court.

> Parties may establish the existence or nonexistence of a material disputed fact by:
>
> - citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
>
> - demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

With respect to the determination of cross-motions for summary judgment, the Tenth Circuit has summarized that:

> "The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967). Accordingly, "cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts.'" *Id*.

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (alteration and citations omitted).

### III. DISCUSSION

Safi Bullock argues that undisputed facts impel the following legal conclusions: (1)

5

title 15, section 178 of the Oklahoma Statutes precludes Cynthia, Caleb, Levi, and Samuel Bullock from taking under the policy; (2) Caleb, Levi, and Samuel Bullock were not properly designated as contingent beneficiaries because they were not identified in the Application by name and social security number; and (3) Troy Bullock submitted a new application at the time the Policy was reissued and, though the application was not discovered, the Court should give effect to Troy Bullock's intent to name new beneficiaries under the policy. Cynthia, Caleb, Levi, and Samuel Bullock argue that they are entitled to summary judgment, and that Caleb, Levi, and Samuel should receive the Policy proceeds, because the undisputed facts reflect that Troy Bullock never changed, or attempted to change, the contingent beneficiaries designated on his original Application. *See* C.B. Mot. at 13.

### A. *Effect of Title 15, Section 178 of the Oklahoma Statutes*

Safi Bullock contends that title 15, section 178 of the Oklahoma Statutes precludes Cynthia, Caleb, Levi, and Samuel Bullock from taking under the policy.[4] This section governs the effect of a divorce on contracts designating the former spouse as the beneficiary of death benefits. Section 178 provides, in pertinent part, "In the event of either divorce or annulment, the decedent's former spouse shall be treated for all purposes under the contract as having predeceased the decedent." Okla. Stat. tit. 15, § 178(A).

#### 1. Cynthia Bullock as Beneficiary

The parties agree that—whether as a result of Troy Bullock's direction in 2017 that Primerica "remove Cynthia Bullock from my policy" or, failing that, by application of

---

[4] The parties agree that Oklahoma law governs.

6

section 178—Cynthia Bullock was not a beneficiary under the policy at the time of Troy Bullock's death.  *See* S.B. Mot. (Doc. No. 18) at 7-9; C.B. Mot. (Doc. No. 25) at 12.

### 2. Effect of Section 178 on Caleb, Levi, and Samuel

Safi Bullock contends that there can be no "children born to [the] marriage" of Troy Bullock and Cynthia Bullock if—by application of section 178—Cynthia Bullock is treated as having predeceased Troy Bullock.  This is incorrect for several obvious reasons.  First, the statute's mandated finding that Cynthia Bullock predeceased Troy Bullock—that is, the legal fiction that Cynthia Bullock died prior to Troy Bullock's death on July 11, 2019—would not equate to a finding that there was no marriage between Troy Bullock and Cynthia Bullock or that there could be no children born of the marriage.  Second, the statute addresses "provisions in the contract in favor of the decedent's former spouse," not provisions to the benefit of children born of the marriage ending in divorce.  Okla. Stat. tit. 15, § 178.  Section 178 has no effect on Caleb, Levi, and Samuel's status as contingent beneficiaries.

### B. *Validity of the Original Designation of Contingent Beneficiaries*

Safi Bullock next argues that the designation of contingent beneficiaries in the 1999 Application is a nullity because, in stating that the contingent beneficiaries were "otherwise any children born to marriage of the insured and said wife, or surviving equally," the Application fails to provide contractually required information.  Specifically, Safi Bullock points to the fact that none of Caleb, Levi, or Samuel was identified by name in the "List Contingent Beneficiaries" section of the Application and no social security number for any of them was provided in the "Social Security No." section.  According to Safi Bullock,

7

these omissions rendered the Application "insufficient as a matter of law" as to the identification of contingent beneficiaries because there was "nothing ambiguous" about the Application's request for this information and parties "'are bound by [the] terms of the contract.'" S.B. Mot. at 11-12 (quoting *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014)).

The authorities Safi Bullock relies upon do not support the premise of her argument—that the omission of information from form fields seeking identifying details can invalidate a beneficiary designation even when the beneficiary's identity is nonetheless ascertainable from the information provided. To the contrary, "[i]n Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties." *Porter*, 330 P.3d at 515 (internal quotation marks omitted); *see* Okla. Stat. tit. 15, §§ 152, 155. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." Okla. Stat. tit. 15, § 159. In this case, the identity of the contingent beneficiaries was clearly articulated in the Application despite the omission of names and social security numbers, and there is no question that Troy Bullock intended to designate his children with Cynthia Bullock—that is, Caleb, Levi, and Samuel—as contingent beneficiaries. The Application's identification of persons by category rather than name was not contrary to the terms of the policy, but expressly contemplated by it. *See* S.B. Mot. Ex. 1, at 8 ("We may rely on a sworn statement by any responsible person to discover the identity or nonexistence of any Beneficiary not identified by name."). The Court rejects Safi Bullock's contention that, under the

undisputed material facts, the information provided in the 1999 Application was insufficient to effectively designate Caleb, Levi, and Samuel as contingent beneficiaries.

    C. *Effect of 2017 Request to Separate Policy and Remove Cynthia Bullock as Primary Beneficiary*

The policy provides that "[i]f no primary Beneficiary is living at the Insured's death, the death proceeds will be paid to any contingent Beneficiary." *Id.* Because the original designation of Cynthia Bullock as the policy's primary beneficiary was inoperative at the time of Troy Bullock's death, the terms of the policy dictate that—absent proof that a subsequent change in designation of beneficiaries was received (or at least submitted)—the policy proceeds are to be paid to Caleb, Levi, and Samuel as contingent beneficiaries.

Presenting documents that were produced by Primerica, as well as some that were found in Troy Bullock's files after his death, Safi Bullock argues that the Court should conclude from these documents that Troy Bullock attempted to change the beneficiaries on the policy and give effect to his intent to name new beneficiaries. *See* S.B. Mot. at 4-5, 14-15. Cynthia, Caleb, Levi, and Samuel Bullock argue that because the evidence demonstrates that Troy Bullock removed Cynthia Bullock as the primary beneficiary but did not change or attempt to change the designation of Caleb, Levi, and Samuel as the sole contingent beneficiaries, the Court should conclude as a matter of law that Caleb, Levi, and Samuel are entitled to the policy proceeds. *See* C.B. Mot. at 13.

Safi Bullock's cited documents include: (1) a page dated March 13, 2017, and signed by Troy Bullock, which states, "Please remove Cynthia Bullock from my policy once her spousal conversion has been processed"; (2) a page in a Primerica "Policy Owner Services" document containing a policy number and the statement, "A NEW

9

APPLICATION WAS SUBMITTED WITH THIS POLICY CHANGE FORM ON 3/17/17"; and (3) the notes of a Primerica agent, stating that "Troy recently got divorced from Cynthia Bullock and he wants to do a spouse conversion to split their policies" and that Troy Bullock has "3 boys" and "2 new steps." S.B. Mot. Ex. 12 (Doc. No. 18-12) at 1-3; S.B. Mot. Ex. 11 (Doc. No. 18-11) at 1.[5] Safi Bullock acknowledges that no new application form, relevant to the 2017 reissuance of the policy, has been found by Primerica or the parties. She also acknowledges that Primerica denies that any new application form was submitted to it.

Safi Bullock argues that, although a new application form was never found, the existence of the page stating "A NEW APPLICATION WAS SUBMITTED WITH THIS POLICY CHANGE FORM ON 3/17/17" reflects that Troy Bullock submitted a new application to Primerica in March 2017 just prior to the reissuance of his policy. Safi Bullock cites *Shaw v. Loeffler*, 796 P.2d 633 (Okla. 1990), for the proposition that if "the insured has done all in his power to comply with the policy's requirements, but has failed to finalize the change due to the non-occurrence of some ministerial act," "the courts may regard that as done which ought to be done, i.e. recognize the change in beneficiary." *Shaw*, 796 P.2d at 635. Citing the notes of the Primerica agent that Troy Bullock has "3 boys" and "2 new steps,"[6] Safi Bullock argues that "[t]he instructions to the agent show that the Insured listed who the Insured wanted as his new beneficiaries" and that "the

---

[5] The Court assumes without deciding that these documents are admissible. *See* C.B. Mot. at 8-9 (broadly arguing that the documents lack foundation and constitute hearsay).

[6] The parties do not dispute that this note is inaccurate in its description of Child A and Child B as stepchildren. The Court means no disrespect by repeating that third-party note.

10

Insured did . . . all within his power to complete a change of beneficiary form and under the law, that is sufficient." S.B. Mot. at 14, 15.

The Court agrees with Cynthia Bullock that these documents are insufficient to create a genuine question of fact as to whether Troy Bullock changed, attempted to change, or intended to change the beneficiaries listed on his original Application beyond his removal of Cynthia Bullock as the primary beneficiary. As noted, the original Application designated Cynthia Bullock as the primary beneficiary of the policy and the children of the marriage of Troy and Cynthia Bullock—that is, Caleb, Levi, and Samuel—as the contingent beneficiaries. On March 13, 2017, Troy Bullock sent Primerica a signed document directing that Cynthia Bullock be removed as a beneficiary of the policy but saying nothing about adding a new primary beneficiary or changing the contingent beneficiaries. The agent's notes likewise reference a spousal conversion, and the existence of Child A and Child B, but do not record any suggestion of an intent to add a new primary beneficiary or change the contingent beneficiaries. And even if the documents cited by Safi Bullock were sufficient to allow a reasonable inference that a new application form was completed and/or submitted, there is no evidentiary material in the summary judgment record that would support a finding that this undiscovered document listed new beneficiaries—much less, that it designated any of Safi Bullock, Child A, or Child B as beneficiaries. Accordingly, summary judgment must be entered in favor of Cynthia, Caleb, Levi, and Samuel Bullock, directing that Caleb, Levi, and Samuel are entitled to the proceeds of the policy.

CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1) The Motion for Summary Judgment of Defendant Safiyatou Bullock, individually and as the personal representative of the estate of Troy D. Bullock and as the mother and next friend of Child A and Child B (Doc. No. 18), is GRANTED IN PART and DENIED IN PART. The Motion is granted as to the request for summary judgment against Cynthia Bullock and denied in all other respects.

2) The Cross-Motion for Summary Judgment of Defendants Cynthia Bullock, Caleb Bullock, Levi Bullock, and Samuel Bullock (Doc. No. 25) is GRANTED.

3) A separate judgment shall be entered in favor of Defendants Caleb Bullock, Levi Bullock, and Samuel Bullock. The interpled funds deposited by Plaintiff Primerica Life Insurance Company into the registry of this Court, plus all accrued interest, shall be paid to Defendants Caleb Bullock, Levi Bullock, and Samuel Bullock in accordance with Local Civil Rule 67.2 (W.D. Okla.).

IT IS SO ORDERED this 30th day of September, 2021.

CHARLES B. GOODWIN
United States District Judge